WALKER, Justice, for the Court:
Gerald H. Scott, proceeding under Mississippi Code Annotated section 91-1-27 (1972) filed a petition on November 12, 1976, in the Chancery Court of Jefferson Davis County, Mississippi, requesting the court to recognize Gerald H. Scott, James C. Wallace, III, and Maudella L. Wallace as the owners of an undivided four-ninths interest in a described 260 acre tract of land in that county. It was alleged that the three individuals were the heirs at law of Annetta L. Scott, deceased. Gerald Scott was the stepfather of James and Maudella Wallace.
Annetta Scott died intestate in Muskeg-on, Michigan, on January 12, 1971. On April 6, 1971, her husband pled nolo conten-dere to involuntary manslaughter, the count being that “Gerald H. Scott did kill and slay one Annetta L. Scott as the result of the gross and reckless use of a firearm, to-wit, a shotgun.” On June 17, 1971, the probate court of Muskegon, Michigan, entered an order decreeing Gerald Scott, Mau-della Wallace and James Wallace the heirs of Annetta. Subsequently, a consent judgment was entered into between Scott through his guardian ad litem and the two children of Annetta. The judgment divided the Michigan assets of Annetta approximately equally between the three parties. No mention was made of real estate located in Mississippi in the judgment, inventory or any other pleadings filed in that cause.
Prior to a hearing upon Scott’s petition, John H. Bianchi filed a motion to intervene identifying himself as the owner of two oil, gas and mineral leases executed by James C. Wallace, III,, and Maudella L. Wallace, respectively. Scott waived objection to the intervention and Bianchi was allowed to file an answer which contained affirmative matter. Bianchi alleged that James C. Wallace, III, and Maudella L. Wallace were the sole heirs at law of Annetta L. Scott, deceased, and that Gerald H. Scott, husband of the deceased, was barred from inheriting any interest in the property of the deceased because he had willfully killed Annetta L. Scott. Bianchi also averred that Gerald H. *291 Scott did not inherit any interest in the Mississippi lands because of a consent decree entered by the Circuit Court of Musk-egon County, Michigan, which purported to preclude Scott from any further participation in the estate of Annetta L. Scott.
Scott filed an amendment to the original petition which responded to the affirmative matter. The petition averred that Scott was insane at the time of the altercation between Scott and his wife; that Scott had been adjudicated as mentally ill on October 5, 1970, and not discharged from convalescent status at the time of the altercation. Scott further averred that the death of Annetta L. Scott resulted from the accidental discharge of a shotgun during the course of the altercation and that the action of Scott was not willful, malicious, or premeditated in any respect. Scott denied that the consent decree in Michigan affected the Mississippi property. Scott attached to his amended petition certain proceedings relating to the insanity matter, the criminal charges against him in Michigan, and the proceedings in probate in Michigan.
At trial, in addition to the documentary evidence entered by stipulation, testimony was offered by Scott to explain the circumstances of the killing. Bianchi testified as an adverse witness, and Jerome R. Sanford, an attorney from Muskegon, Michigan, testified. Bianchi objected to testimony by Scott which he argues was an attempt to vary the terms of a judgment. This was overruled. Also, while offering no witnesses himself, he objected to the testimony of Gerald H. Scott under the “Dead Man Statute,” Mississippi Code Annotated section 13-1-7 (1972), claiming that Scott was attempting to testify in support of a claim against the estate concerning events which occurred during the lifetime of the deceased. This objection was also overruled and the court below held for Scott. We affirm.
I.
Bianchi assigns as error that “The trial - court erred in admitting parol evidence to vary the terms of a previously entered consent settlement decree in the Michigan court when such decree is not ambiguous or affected by fraud, accident or mistake.”
The major thrust of Bianchi’s argument is that the testimony of Scott that he “did not know his wife owned Mississippi property when the consent decree was entered” is an attempt to vary the terms of the Michigan decree. This emphasis is misplaced, and the contention misleading.
The real inquiry is whether the Mississippi lands were a subject of the Michigan decree. The decree itself makes no reference whatever to Mississippi lands. It provides in pertinent part:
Neither admitting nor denying the allegations of the complaint heretofore filed in this cause, Jerome R. Sanford, Administrator of the estate of Annetta L. Scott, deceased, and attorney for plaintiffs James C. Wallace III. and Maudella L. Wallace; Norman C. Halbower, attorney for defendant Gerald Scott, and Alan Ra-poport, Guardian ad Litem of Gerald Scott, agree to the following consent judgment:

Pursuant to the consent of the parties, and the Court being satisfied as to the reasonableness of the settlement, it is ORDERED and ADJUDGED:
1. That the estate of Annetta L. Scott, deceased is hereby awarded the proceeds of the $5000 life insurance policy on her life with the Great American Insurance Company, free of any claim of defendant Gerald Scott.
2. Defendant Gerald Scott shall have the savings account held jointly by him and Annetta L. Scott, in the Hackley Union National Bank and Trust Company, free of any claim of the estate of Annetta L. Scott, deceased, or her heirs.
3. That the estate and the heirs of Annetta L. Scott shall transfer all interest in the following described premises to Gerald Scott, the defendant:
Lots 2 and 3, Block 6, Village of Baldwin, Lake County, Mich.
*292 And recording of this judgment shall operate to pass to Gerald Scott all interest of the estate of Annetta L. Scott, or her heirs, in the above described premises.
4. That defendant Gerald Scott shall convey to the estate of Annetta L. Scott, deceased, all of his interest to the following described premises:
Lot 1, Block 6, Village of Baldwin,
Lake County, Michigan.
And recording of this judgment shall operate to pass to the estate of Annetta L. Scott, deceased, all interest of Gerald Scott in the above premises.
5. That the estate of Annetta L. Scott, deceased, is awarded all of the household furniture of the parties, except a color TV set and organ, which shall be the property of Gerald Scott, defendant.
6. That the provisions made in this judgment in favor of the estate of Annet-ta L. Scott, deceased, shall be deemed to include a settlement for the estate’s claim under the Unlawful Death Act of Michigan; and the above provisions are in lieu of any claim of Defendant as heir of Annetta L. Scott.
/s/ James F. Schoener
Circuit Judge
Item No. 6 provides in part “. and the above provisions are in lieu of any claim of Defendant [Scott] as heir of An-netta L. Scott.”
Bianchi contends that by virtue of this language in the consent decree, Scott relinquishes all rights as an “heir” of his wife, Annetta, and thus did not inherit one-third of Annetta’s interest in the 260 acre tract in Mississippi as he would have done, absent the decree, under the laws of descent and distribution of Mississippi. Mississippi Code Annotated section 91-1-7 (1972).
It is well settled that a judgment of the courts of one state cannot directly affect and determine title to real property in another state. Lyle Cashion Co. v. McKendrick, 227 Miss. 894, 87 So.2d 289 (1956). We have, however, held that where a court of another state has jurisdiction over the parties themselves, in personam, that court may determine their legal rights with respect to the property as between them, even though the court is without power to act directly upon the title to foreign real estate. In such a case, we have allowed the foreign decree to be pled in this State, and have applied the doctrine of collateral es-toppel if warranted by the facts. Cuevas v. Cuevas, 191 So.2d 843, 847 (Miss.1966).
In order to determine whether the doctrine of collateral estoppel is applicable in this case, we must construe the Michigan judgment “in light of the situation of the court, what was before it, the accompanying circumstances, and what was intended to be decided.” Gillum v. Gillum, 230 Miss. 246, 92 So.2d 665 (1957). In that case we pointed out:
“ * * * As a general rule, the meaning, effect, and legal consequences of a judgment must be ascertained from its own provisions and language, if possible. If, however, the judgment is ambiguous or obscure, or a satifactory [sic] interpretation cannot be determined from the judgment itself, the entire judgment roll or record may be looked to, examined, and considered for the purpose of interpreting the judgment and determining its operation and effect.” (230 Miss. at 255, 92 So.2d at 669 quoting from 49 C.J.S. Judgments § 436 p. 867). (Emphasis added).
The Michigan pleading entitled “Petition for Authority to Settle Interest of Estate of Deceased in Real Estate, Bank Account and Life Insurance” provided in part:
4. That on the 30th day of September, 1970, husband Gerald Scott was adjudicated mentally ill by the Muskégon County Probate Court, and at the time he shot deceased had not been officially declared sane; and the circumstances under which he shot the above deceased were irrational, not having been preceded by any significant argument.
5. That this Administrator believes, and the heirs of Annetta L. Scott agree, that there is a substantial possibility that *293 in the pending murder trial against Gerald Scott, he will be acquitted by reason of insanity.
6. That if Gerald Scott is acquitted by reason of insanity, he will become the sole owner of the proceeds of an insurance policy, Hackley Union National Bank joint savings account, and the undivided interest of deceased in the Village of Baldwin parcels of land; and the estate of Annetta L. Scott would then consist solely of a claim under the Michigan Unlawful Death Act limited to the $2500 funeral bill, inasmuch as Annetta L. Scott died without conscious pain and suffering and no one was dependent upon her for support.
7. On the other hand, if Gerald Scott, husband of deceased, is convicted of murder or manslaughter, he would still be entitled, under Michigan law, to one-half of the joint bank account, and an undivided one-third interest in the Village of Baldwin properties held jointly with deceased and her mother.
8. That petitioner, with the approval of the two heirs, proposes to settle with the surviving husband, Gerald Scott, the disputed assets in the estate — namely, the Hackley Union National Bank savings account, the life insurance policy, and the Village of Baldwin real estate — in such a way that the estate of Annetta L. Scott receives the $5000 life insurance policy and Gerald Scott’s interest in Lot 1 of Block 6 Village of Baldwin, allowing Gerald Scott the Hackley Union National Bank savings account and deceased’s interest in Lots 2 and 3, Block 6, Village of Baldwin.
9. That the effect of the above settlement would be to give the estate of An-netta L. Scott disputed assets worth $9000 — in addition to other inventoried assets that were in her name alone — giving Gerald Scott, her husband, disputed assets in the amount of about $4000.
WHEREFORE, petitioner asks this Court for authority to enter into consent judgments in Circuit Court giving the estate of Annetta L. Scott the $5000 Great American insurance policy on her life, Gerald Scott’s interest in Lot 1, Block 6, Village of Baldwin, and a share of disputed furniture, leaving to Gerald Scott the interest of Annetta L. Scott in Lots 2 and 3, Block 6, Village of Baldwin, plus the interest of deceased in the Hack-ley Union National Bank savings account and also a share of the furniture of the parties. (Emphasis added).
Looking to the Michigan judgment, the judicial opinions accompanying the judgment, and the pleadings in the cause, it becomes evident the parties did not intend that the Michigan consent decree would cover Mississippi lands. The parties went to great pain to list the assets of Annetta Scott, all of which were located in Michigan; no Mississippi lands were mentioned. Further, the consent judgment was a compromise whereby each of the three parties, Scott, James, and Maudella received essentially equal portions of the assets therein listed.
We also note that Scott was named a defendant in the suit at a time when he had been declared mentally ill by the Michigan courts. He did not participate personally in the negotiations leading to the consent judgment and there is no evidence in the proceedings that his appointed guardian ad litem or the other participants had any knowledge of the Mississippi lands.
Having considered the record as a whole, we reach the inescapable conclusion that none of the parties ever contemplated the consent judgment would apply to any assets other than those enumerated in the judgment and located in Michigan. The doctrine of collateral estoppel is not applicable under the evidence presented.
Therefore, Scott’s testimony was immaterial and the assignment of error with regard to parol evidence has no merit.
II.
The appellant next contends it was error to allow Scott to testify since he was a claimant to Annetta’s estate and his testimony was in violation of Mississippi Code Annotated section 13-1-7 (1972) (the *294 Dead Man’s Statute). He also contends the chancellor was in error in finding as a matter of fact that Scott did not willfully take the life of his wife. Bianchi’s contention in this regard is based on Mississippi Code Annotated section 91-1-25 (1972) which provides that “If any person wilfully cause or procure the death of another in any way, he shall not inherit the property, real or personal, of such other . . . .”
The only evidence in the entire record going to the issue of willfulness in the killing was Scott’s criminal plea and his testimony. The plea was that of nolo con-tendere, which, under Michigan law, admits no facts as to the occurrence. Further the plea was to charges of involuntary manslaughter which per se carries no indication of willfulness. Thus it is answer enough to Bianchi’s contention under the Dead Man Statute that if Scott’s testimony is excluded there is no evidence at all as to how the killing occurred and Bianchi must fail in his contention that Scott is barred from inheriting by Mississippi Code Annotated section 91-1-25 quoted above. On the other hand, if Scott’s testimony is considered, he testified the shooting was accidental and there was no evidence to the contrary. Moreover, although the prohibition of the Dead Man Statute was not specifically considered, we held in Henry v. Toney, 211 Miss. 93, 50 So.2d 921 (1951) that the testimony of the accused spouse is admissible, stating:
After the appellees rested their case, the appellant, Henry, offered to testify to the circumstances of the killing, and in explanation of his plea of guilty, but objection thereto was sustained. However, a record of his testimony was made and appears in the record. His story, if believed, showed that he was not even guilty of culpable negligence under our law, much less of a willful killing. His evidence should have been admitted.
On a new trial of this case, all evidence which will throw any light on the issue of whether or not this killing was willful is competent and admissible, without regard to the action of the Ohio court. (211 Miss, at 99-100, 50 So.2d at 924).
We hold the court did not err in its determination that Scott did not willfully kill his wife and further hold the spouse’s testimony in such a case is an exception to the Dead Man’s Statute, Mississippi Code Annotated section 13-1-7 (1972).
For the above reasons, the judgment of the trial court is affirmed.
AFFIRMED.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ., and BROOM, LEE, BOWLING and COFER, JJ., concur.
SUGG, J., took no part.